IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


PHILLIP A. BROYLES                                    No. 03:11-CV-144-HZ

            Plaintiff,                              OPINION & ORDER

    v.

THE OREGON STATE BOARD OF HIGHER
EDUCATION; PORTLAND STATE
UNIVERSITY; PAUL KELLY, JR.; JAMES
L. FRANCESCONI; MATTHEW W.
DONEGAN; JILL W. EILAND;
HANNAH FISHER; ALLYN FORD;
BRIAN FOX; LYNDA M. CIUFFETTI;
ROSEMARY POWERS; PRESTON
PULLIAMS; KIRKE. SCHUELER; DAVID
V. YADEN; VIKKI VANDIVER; ELLEN
MASTERSON; KEVA MILLER; KRISTINE
MUNHOLLAND; PAULINE JIVANJEE;
EILEEN BRENNAN; KRISTINE NELSON;
MICHELE TOPPE; MATTHEW MODRCIN;
JAMES NASH; SCOTT BARNETT; ANNE
CAROLINE CURRY; JOSEPH P. HOLLIDAY;
BOWEN McBEATH; ROY KOCH; WILLIAM
FEYERHERM; and WIM WIEWEL,

            Defendants.

Phillip A. Broyles, Pro Se
1620 SE Cesar E. Chavez Blvd. Apt. 104
Portland, OR 97214

      Attorney for Plaintiff

J. Michael Porter
Elisa J. Dozono
Miller Nash LLP
111 SW Fifth Avenue, Suite 3400
Portland, OR 97204

      Attorneys for Defendants

HERNANDEZ, District Judge:

      Defendants have filed a motion for summary judgment on all of Plaintiff's claims. Based on the following I grant Defendants' motion for summary judgment.

BACKGROUND

      Plaintiff Broyles was admitted as a graduate student of the Portland State University's School of Social Work in August 2008. Compl. ¶2. All students in the School of Social Work must meet certain standards as set out in the Masters of Social Work Program Handbook. Declaration of Pauline Jivanjee in Supp. Mot. Summ. J. ("Jivanjee Decl.") Ex. 1. Broyles was suspended from the program, but permitted to reapply after one year. Answer ¶2. He has brought several claims against the Oregon State Board of Higher Education and its individual members, and several professors, deans, and academic officials at Portland State University ("PSU"). Compl. ¶¶18-36.

      The following events leading to Broyles' suspension are undisputed. As part of the graduate program curriculum, Broyles worked with the Multnomah County High Risk Drug Unit in the fall of 2008. Declaration of Keva Miller in Supp. Mot. Summ. J. ("Miller Decl.") ¶4. His

field instructor, Edie Wooldridge, was concerned about a potential violation of the NASW[1] Code

of Ethics that all students in the School of Social Work are expected to follow.  Jivanjee Decl.

Ex. 1 at 27.  Ms. Wooldridge noted a potential conflict of interest because Broyles had accessed

agency files of a client he served in private practice.  Miller Decl. Ex. 6 at 3.  Broyles, Ms.

Wooldridge, and Dr. Keva Miller—Broyles' advisor met to discuss the conflict of interest.

Miller Decl. Ex. 3 at 1.  After the meeting, Ms. Wooldridge and Dr. Miller were not convinced

that Broyles understood their concerns.  Id.

During the winter term, Broyles developed a conflict with Dr. Kristine Munholland, a

professor for one of his classes.  Throughout the term, Dr. Munholland received complaints that

Broyles was not participating in the group project.  Decl. of Kristine Munholland in Supp. of

Mot. Summ. J. ("Munholland Decl.") ¶4.  Broyles did not attend the last class to submit the final

paper, which was worth 10% of his grade.  Id. at ¶5.  When Dr. Munholland reminded Broyles to

turn in the paper, Broyles made several demands:

> If, at this point, I have not submitted enough coursework to pass your class with a
> grade of B- or better, I will need to have a written explanation of the grade I
> received on the work already graded, submitted to the dean of the school of social
> work or whoever handles conflict resolution among the students and staff.  I will
> also expect to have the grading criteria cross-referenced in comparison with other
> student's papers which reflect the same scoring.
>
> After that happens I will expect to receive full assurance the assignment needs to
> be turned in to pass, are objectively graded based on specific criteria that are
> measurable and clear to anyone else who observes it.  This would probably mean
> another person would have to grade it.

Id. Ex. 2 at 3.  Broyles did not turn in the final assignment and received a C in Dr. Munholland's

class.  Id. at 2.  Broyles emailed Dr. Munholland to request an explanation for the C grade and

said he would file a formal grievance with the School of Social Work and with PSU.  Id.

---

[1] "NASW" stands for the National Association of Social Workers.

Dr. Miller also recounts an instance in which Broyles may have misrepresented his credentials.  Miller Decl. Ex. 6 at 4.  Broyles stated that "In November I visited one of my DV clients in jail.  When I told the [probation officer] about it I communicated to him that I have the ability to gain access to the jail and was an intern.  What I didn't make clear was that I had access to the jail as a provider of services previously and did not have access as an intern."  Decl. of Phillip Broyles in Supp. of Pl.'s Rebuttal ("Broyles Decl.") at 11.  Broyles does not dispute his statement, but disputes the characterization of this statement as an admission that he misrepresented his credentials to the probation officer.  Id.

As determined by faculty, students in the School of Social Work must demonstrate a "required level of achievement—performance, professional behavior in the classroom and field, and ethical conduct—sufficient to interact positively with client systems."  Jivanjee Decl. ¶4, Ex. 1 at 96.  The culmination of the foregoing events led Dr. Miller to notify Broyles that the School of Social Work would be conducting a retention review "to address [Broyles'] unsatisfactory student performance and conduct", including his potential violations of the NASW Code of Ethics.  Miller Decl. Ex. 5 at 1.  The decision to hold a review was supported by Eileen Brennan (Dean of School of Social Work), Michele Toppe (Interim Dean of Students), and Natalee Webb (Interim Associate Dean of Students).  Id. Ex. 6 at 1.  Drs. Miller and Jivanjee met with Broyles in person to discuss the retention review process.  Jivanjee Decl. ¶8.  Both had requested campus security to be nearby for the meeting with Broyles.  Id.  Dr. Miller describes that when Broyles learned of the retention review, he began yelling and became "verbally abusive and threatening".  Miller Decl. ¶8.

A retention review committee convened to discuss Broyles' conduct as a student.  The voting committee members were Matt Modrcin, Bowen McBeath, and Anne Curry-Stevens.

Jivanjee Decl. ¶10.  Dr. Jim Nash (Broyles' new advisor) and Ellen Masterson (Director of Field Education) were also invited to participate.  Dr. Miller and Ms. Masterson provided information about the events leading to the need for the retention review.  Miller Decl. ¶9.  Broyles explained and apologized for his behavior.  Jivanjee Decl. ¶11.  The committee concluded that "they had serious concerns about the pattern of inappropriate, intimidating, and abusive behaviors that [Broyles has] demonstrated toward faculty members and [Broyles'] lack of self-awareness regarding [his] own behavior and its effects on others."  Jivanjee Decl. Ex. 7 at 1.  Broyles was suspended from the School of Social Work graduate program for a year, but allowed to petition for reinstatement.  Id. Ex. 7 at 2.  Broyles appealed the decision to the Student Affairs Committee, but the decision was upheld.  Id. at ¶13.  Broyles also appealed the C grade from Dr. Munholland's class to PSU's Academic Appeals Board.  Id. at ¶15.  The Board heard from both Broyles and Dr. Jivanjee and concluded that the C grade was justified.  Id. at ¶17, Ex. 12.  Roy Koch, Provost and Vice President for Academic Affairs, notified Broyles that he agreed with the Board's decision that the grade should remain a C.  Id. Ex. 13.

Broyles has not disputed any of these facts.  Instead, he alleges that he was suspended because Dr. Miller did not agree with a written essay that he had submitted for a class assignment.  Compl. ¶78.  The essay included a proposal to streamline the mental health referral process.  Id.  "Instead of being praised and rewarded for innovation however, as might be expected, [Broyles alleges he] was castigated by [Dr. Miller] for his proposal."  Id.  Broyles claims that he was suspended because his "ethical beliefs and views" were contrary to Dr. Miller's.  Id. at ¶79.  Broyles also alleges that Defendants made false and defamatory statements about him, which caused emotional distress.  Id. at ¶¶113, 123.

/ / /

5 - OPINION & ORDER

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Broyles brings the following claims against Defendants:

Claims 1, 2, and 3:  violation of the First Amendment based on "viewpoint discrimination", "compelled speech", "unconstitutional conditions", "retaliation" for exercise of his First Amendment, and "free exercise of conscience"
Claim 4:  violation of Fourteenth Amendment's Equal Protection Clause
Claim 5:  injunctive relief[2]
Claim 6:  defamation
Claim 7:  intentional infliction of emotional distress

Compl. ¶¶77-125.  Defendants have moved for summary judgment on all these claims based on the merits.  Defs.' Memo. in Supp. Mot. Summ. J. ("Defs. "MSJ"), 12.  Defendants have also raised the defenses of Eleventh Amendment immunity, qualified immunity, statute of limitations, and failure to give notice for the tort claims.  Id. at 22-27.

## I.     Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.  Although the Eleventh Amendment does not explicitly prohibit an action in federal court against a state by one of the state's own citizens, the Supreme Court has construed the Amendment as barring such suits.  See Welch v. Texas Highways & Pub. Transp. Dep't, 483 U.S. 468, 472 (1987); Micomonaco v. Washington, 45 F.3d 316, 319 (9th Cir. 1995). "[T]he reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."  Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429 (1997) (citations omitted).

There are two exceptions to the Eleventh Amendment jurisdictional bar:  (1) Congress can abrogate the Eleventh Amendment without the consent of the states in certain situations; and (2) a state may waive its immunity by consenting to suit in federal court but must do so by "the

---

[2] The Court recognizes that claim five is not an actual claim, but a request for a type of relief.

most express language or by such overwhelming implication from the text as [will] leave no

room for any other reasonable construction." Micomonaco, 45 F3d 316, 319 (9th Cir. 1995).

Neither of these two exceptions applies.

      The Ninth Circuit has held that the Oregon State Board of Higher Education has Eleventh

Amendment immunity for suits brought under 42 U.S.C. § 1983. Peters v. Lieuallen, 693 F.2d

966, 970 (9th Cir. 1982) ("There is no doubt that suit under [§ ] 1983 against the [Oregon] State

Board of Higher Education is a suit against the state *qua* state and is, therefore, barred by the

Eleventh Amendment."); Rounds v. Oregon State Bd. of Higher Educ., 166 F.3d 1032, 1035 (9th

Cir. 1999). Broyles' constitutional claims are brought under § 1983, and thus he is barred from

suing the Oregon State Board of Higher Education. The Ninth Circuit has also held that PSU is

an "arm of the state of Oregon", and thus is protected from suit under the Eleventh Amendment.

Hagel v. Portland State Univ., 237 Fed. Appx. 146, 147 (9th Cir. 2007);

Vineyard v. Soto, Case No. 10-1481-AC, 2011 U.S. Dist. LEXIS 93860, at *8 (D. Or. July 21,

2011).

      Additionally, Broyles has sued several individuals in their official capacity. Compl.

¶¶20, 23, 28, 29, 31, 33. "[A] suit against a state official in his or her official capacity is not a

suit against the official but rather is a suit against the official's office. As such, it is no different

from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)

(citation omitted). Therefore, the constitutional claims against Vikki Vandiver, Kristine

Munholland, Matthew Modrcin, James Nash, Anne Curry, and Bowen McBeath are barred by

the Eleventh Amendment.

/ / /

/ / /

8 - OPINION & ORDER

II.    **Section 1983 Claims**

Broyles' constitutional claims against the board members of the Oregon State Board of Higher Education and other high-ranking university officials fail because he did not allege any individual conduct by these board members.  "State officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). Broyles' has not presented any evidence in his declaration or exhibits that the board members or university officials knew or participated in the alleged constitutional deprivations.  Defendants' motion is granted on constitutional claims against the following board members:  Paul Kelly, Jr., James Francesconi, Matthew Donegan, Jill Eiland, Hannah Fisher, Allyn Ford, Brian Fox, Lynda Ciuffetti, Rosemary Powers, Preston Pulliams, Kirk Schueler, and David Yaden.  Defendants' motion is also granted on constitutional claims against the following high-ranking officials:  PSU President Wim Wiewel, PSU Vice Provost William Feyerherm and Oregon University System Assistant Vice Chancellor Joseph Holliday.

As to the remaining Defendants—who are being sued in their individual capacity, they have raised qualified immunity against Broyles' constitutional claims.  Defs.' MSJ, 25. Qualified immunity is a "judicially-crafted device giving a large measure of protection to the exercise of judgment by public officials."  Bernstein v. Lopez, 321 F.3d 903, 905 (9th Cir. 2003). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Public officials are entitled to qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

To determine if defendants are entitled to qualified immunity, I must consider (1) whether the conduct in question violated a constitutional right, (2) whether the constitutional right was clearly established at the time of the violation, and (3) whether a reasonable official could believe that his or her conduct was lawful. Motley v. Parks, 432 F.3d 1072, 1077 (9th Cir. 2005). Broyles alleges that his constitutional rights were violated when he was suspended from the School of Social Work graduate program. Defendants have presented evidence that Broyles was suspended because of his potential violations of the NASW Code of Ethics and his pattern of inappropriate, intimidating and abusive behavior to the faculty. Broyles disagrees and argues that he was suspended for his views in a written essay that conflicted with Dr. Miller. Broyles does not support this argument with any evidence in his declaration or exhibits, despite given an additional opportunity to do so.[3] The only evidence in the record is that Broyles was suspended for his inappropriate and possibly unethical behavior. There is no evidence connecting his suspension to the written essay Broyles claims Dr. Miller did not like. As a result, he fails to rebut Defendants' evidence to show that there is a genuine issue of material fact. Because I do not find that the remaining Defendants violated Broyles' constitutional rights, they are entitled to qualified immunity. Thus, Broyles' § 1983 claims against Eileen Brennan, Keva Miller, Kristine Nelson, Ellen Masterson, Pauline Jivanjee, and Michele Toppe are barred by qualified immunity.

/ / /

/ / /

_____

[3] Broyles initial response to Defendants' motion was unsupported. Dkt. #56. The Court issued a Summary Judgment Advice Notice and permitted Broyles to file a sur-response. Jan. 6, 2012 Order, Dkt. #62. Broyles filed his sur-response on Jan. 23rd and supported it with his declaration and several exhibits. Dkt. #63.

III.    **Tort Claims**

Broyles has alleged the state tort claims of defamation and intentional infliction of emotional distress.  Tort claims based on Oregon state law invoke the Oregon Tort Claims Act, which generally permits government entities and their officers to be sued for their torts, but limits general damages to specific sums, prohibits punitive damages, requires timely notice of the tort claim, and creates certain statutory immunities for defendants.  ORS § 30.260-30.300. Defendants argue that Broyles did not plead in his complaint that he filed the tort claim notice as required in ORS § 30.275(2)(b), nor has he presented evidence of such notice.  Defs.' MSJ, 26-27.  The notice requirement's purpose is to allow the public body to investigate the claim while evidence is still fresh and to promptly correct any defect from which the claim arose.  Perez v. Bay Area Hosp., 315 Ore. 474, 482, 846 P.2d 405 (1993).  Proof of giving the required notice is an essential element of a plaintiff's case-in-chief.  ORS § 30.275(7).  Therefore, failure to plead or prove notice may result in dismissal of the claim.  Urban Renewal Agency of City of Coos Bay v. Lackey, 275 Ore. 35, 40, 549 P.2d 657 (1976).

Broyles has not presented evidence that he complied with the notice requirement of the OTCA.  Instead, he argues that "it is sufficient. . . to provide 'substantive notice' of the pending claim or claims, without the stricture of a formally-titled 'tort claims notice.'"  Pl.'s Resp. to Defs.' MSJ, 6.  Broyles cites to Brown v. Portland School Dist., 291 Ore. 77, 79 (Or. 1981), in support of this proposition.  Broyles misunderstands the holding of Brown.  In Brown, there was "substantial compliance" with the OTCA notice requirement when the plaintiff mailed the notice by first class rather than certified mail; and the notice had been received by defendant.  Id. at 80, 83.  Here, Broyles has failed to present evidence that *any* notice was given, let alone a notice that

substantially complied with the OTCA.  Therefore, summary judgment is granted in favor of all Defendants on the claims for defamation and intentional infliction of emotional distress.

CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment [#51] is granted on all of Plaintiff's claims, Plaintiff's pending motion to compel [#68] is denied as moot, and this case is dismissed.

IT IS SO ORDERED.

Dated this __20th____ day of March, 2012.

/s/ Marco A. Hernandez_____
MARCO A. HERNANDEZ
United States District Judge

12 - OPINION & ORDER